IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCES GABLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 5349 |
| | ) |
| MACK TRUCKS, INC., VOLVO | ) |
| GROUP NORTH AMERICA LLC, | ) |
| WILLIAM BALSIS, and KEITH | ) |
| SCHROEDER, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Frances Gable ("Gable") alleges that her former employer and supervisors ("Defendants") fired her in August 2011 because she took two weeks of leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

Defendants have moved for summary judgment on the ground that they fired Gable for a non-discriminatory reason: she incurred more than four strikes under the company's attendance policy--the threshold for termination--before she even took FMLA leave. I deny Defendants' motion for the reasons stated below.

I.

My presentation of the facts is based on a careful review of the parties' Local Rule 56.1 statements and the record evidence cited therein. It is unnecessary to address

1

Defendant's specific objections to Gable's submissions because I have disregarded any statements or responses that "consist of hearsay, speculation, legal conclusions, improper argument, and evasive denials, in addition to those that do not properly cite to the record, are unsupported, or are otherwise improper." *Boudreau v. Gentile*, 646 F. Supp. 2d 1016, 1019 n.1 (N.D. Ill. 2009).

In August 2004, Gable was hired for a clerical position at Volvo's parts distribution center in Joliet, Illinois. *See* Dkt. No. 65 ("Pl.'s L.R. 56.1 Resp.") at ¶ 5. At all times relevant to this lawsuit, Gable's immediate supervisor was Defendant Bill Balsis ("Balsis"). *Id*. at ¶ 7. Balsis, in turn, reported to Defendant Keith Schroeder ("Schroeder"), the director of the Joliet part distribution center. *Id*. at ¶ 6.

During Gable's employment, Volvo maintained an attendance policy under which employees would receive strikes or "occurrences" for tardiness and other unexcused absences. *Id*. at ¶ 11. Volvo imposed one half of an occurrence for tardiness of one hour or less; three quarters of an occurrence for tardiness between one and four hours; and one full occurrence for tardiness of four hours or more. Pl.'s Ex. M. Volvo employees could call in without incurring a strike up to five times per year for "personal business" or "personal illness" as long as the employee presented supporting documentation upon

returning to work. Pl.'s Ex. M. If an employee failed to present supporting documentation that was satisfactory to his or her supervisor, Volvo's policy was to mark the employee's absence as unexcused and impose a strike. *Id.*

Volvo reviewed an employee's attendance record whenever he or she incurred a strike to determine whether discipline was appropriate. Pl.'s L.R. 56.1 Resp. at ¶ 12. Volvo would take corrective action if an employee had (a) two occurrences within the preceding four weeks or (b) five occurrences within the preceding six months. *Id.* The corrective action taken depended on which step in Volvo's discipline policy a particular employee had reached. *Id.* The four steps in Volvo's progressive discipline policy were (1) a verbal warning, (2) a written warning, (3) a three day suspension, and (4) termination. *Id.* Schroeder could issue verbal and written warnings on his own, but he needed approval from the Human Resources Service Center before an employee could be suspended or fired. Dkt. No. 67 ("Defs.' L.R. 56.1 Resp.") at ¶ 18.

Volvo's attendance records from 2011 show that Gable received four and a half occurrences during the first half of the year, but the only discipline she received was a verbal warning on February 9, 2011 for accumulating two occurrences in the preceding four weeks. *Id.* at ¶ 29-31.

The central events in this case started on July 11, 2011 when Gable called in at the beginning of her shift. *Id*. at ¶ 33. Gable reported to Mike Temko ("Temko") or Jason Mussatto--both of whom were supervisors--that the police were at her house because of a domestic altercation. Pl.'s Dep at 143-45. Gable returned to work the next day and met with Balsis and Temko. Pl.'s L.R. 56.1 Resp. at ¶ 36. Gable explained that she was going through an ugly divorce that involved physical and verbal abuse. Pl.'s Dep. at 146. She also mentioned that her husband was seeking an order of protection against her. *Id*.

According to Gable, Balsis did not say much during the July 12 meeting, but Temko instructed her to bring in documentation relating to her absence and reminded her about Volvo's employee counseling program. *Id*. at 147-48. Gable says she gave Balsis paperwork from the Naperville police on July 12 to explain her absence the previous day, *id*. at 150 and 153, but Volvo denies receiving any supporting documentation, Pl.'s L.R. 56.1 Resp. at ¶ 34. Accordingly, Volvo marked Gable's absence on July 11 as unexcused and gave her an occurrence. *Id*. at ¶ 35.

On July 13, 2011, Schroeder stopped Gable as she was walking through the warehouse around lunchtime. Pl.'s Dep. at 29. When Schroder asked about Gable's absence two days earlier, she disclosed that she "had been going through some domestic issues at home." *Id*. Gable also told Schroeder that she needed

4

to appear in court on July 28 to oppose her husband's petition for an order of protection. Defs.' L.R. 56.1 Resp. at ¶ 3. Schroder promised to do as much he could to provide Gable with a flexible work schedule. *Id*. at ¶ 4.

During the same conversation, Gable told Schroeder she was going to request FMLA leave to have surgery on a deviated nasal septum. *Id*. at 29, 31-32. Schroeder responded that Gable would need to provide supporting documentation for her FMLA leave request and get it approved through the Human Resources Service Center ("HRSC") in Greensboro, North Carolina. Pl.'s Dep. at 29, 31. After the meeting, Schroeder notified Gable by email that she had nine and half days of earned time off ("ETO") left in the calendar year. Schroeder Dep. Ex. 78. Gable responding that she was not going to schedule any ETO days until the HRSC acted on her FMLA request. *Id*.

Shortly after her conversation with Schroeder on July 13 about taking FMLA leave, Gable overheard Balsis complaining to someone on the phone that an unnamed female employee was going to be out. Pl.'s Dep. at 112-13. Upon hearing someone else in the office, Balsis ended his call and slammed down the phone or hit his keyboard in frustration. *Id*. at 113-15. Balsis did not say anything to Gable and walked out of the office. *Id*. at 115-16. She could tell he was unhappy and described him as "large-eyed" and "flustered." *Id*. at 116.

Two days later, on July 15, 2011, Balsis notified Schroeder by email that Gable had not provided documentation to excuse her absence on July 11 and would receive an occurrence under the attendance policy. Pl.'s Ex. E. Schroeder did not object or otherwise respond.

On Monday, July 25, 2011, Gable called Jason Mussatto to report that she was having a "domestic issue," at which point he stopped her and said further details were unnecessary. Pl.'s Dep. at 154-55. Gable said she would call back in the afternoon with an update, but she admits to breaking that promise. *Id*. at 155. Meanwhile, Schroeder asked Balsis to review Gable's attendance record on July 25 and noted that the HRSC was still waiting to receive medical documentation for her upcoming FMLA leave. Pl.'s Ex. F.

The next day, July 26, Gable told Balsis said she could not report to work because of a problem at home. *Id*. at 155-56. Balsis said, "Okay, well, take care of yourself, and we'll see you when you get back." *Id*. at 156. Balsis then reported to Schroeder that Gable had called in again and remarked that she would be at step three of the disciplinary process--a three day suspension--unless she submitted documentation to explain her absences. Pl.'s Ex. G. Upon receiving this information from Balsis, Schroeder instructed Temko to audit Gable's attendance records and made the following observation: "If Bill [Balsis] is

6

right and this continues another day or two Frances will get terminated on attendance." *Id*. Temko confirmed for Schroeder that if Gable did not bring in documentation for her recent absences, she would receive a written warning for her absence on July 25, a three day suspension for her absence on July 26, and a termination notice on July 27 if she received even a fraction of an occurrence that day. *Id*.

Gable asked Balsis on July 26 if she could adjust her hours and work from 10:30 am until 6:30 pm the next day. Balsis Dep. at 154-55. Balsis granted Gable's request. *Id*. at 155. On July 27, Gable called Balsis around 10:25 am and asked to push back her start time by thirty minutes. *Id*. at 155-56. Balsis told Gable she could not change her hours on such short notice, which prompted her to explain that she had missed the previous two days and was running late because of personal problems. *Id*. at 156. After his call with Gable, Balsis told Schroeder about her tardiness and later reported that she had not provided any documentation for her recent absences or tardiness. Pl.'s Ex. I. Gable insists she gave Balsis documentation on July 27 to explain her absences on July 11, 25, and 26. Pl.'s Dep. at 150, 157.

Gable's alleged failure to submit documentation did not result in immediate discipline even though Defendants had already determined that her July 25 absence called for a written

7

warning; her July 26 absence called for a three day suspension; and her tardiness on July 27 now called for termination. Instead of giving Gable at least a written warning on July 27--which Schroeder could do without the HRSC's approval--Defendants let her work a full shift and even approved her FMLA leave that day without requiring any medical documentation. Pl.'s L.R. 56.1 Resp. at ¶¶ 48-49. Defendants also allowed Gable to take an excused absence on July 28 to attend a court hearing on her husband's petition for an order of protection. *Id*. at ¶ 49. Gable then went on FMLA leave from July 29 to August 10. *Id*. at ¶¶ 50-51.

On July 28, the day before Gable's FMLA leave began, Schroeder sought approval from the HRSC to fire her for reaching step four of Volvo's progressive discipline policy. *Id*. at ¶ 52. Schroeder followed up with the HRSC on July 29 to provide reports from the two supervisors who spoke with Gable when she called in on July 25 and 26. Pl.'s Ex. B. Schroeder obtained additional documentation the next business day from one of the supervisors who met with Gable on July 12 to discuss her absence the previous day. *Id.* After conferring with counsel, the HRSC approved Gable's termination. Pl.'s L.R. 56.1 Resp. at ¶¶ 53-55.

When Gable returned from FMLA leave on August 11, 2011, Temko told her not to clock in and directed her to Schroeder's

8

office. Pl.'s Dep. at 110. With an HRSC representative listening by speakerphone, Schroeder recited Gable's attendance and disciplinary history. *Id*. 110-11. When Gable disputed Schroeder's assertion that she had received a three day suspension, he said, "Don't talk, just listen." *Id*. at 111, 166-67, 229. At the end of his speech, Schroeder announced that Volvo was firing Gable because of her attendance issues. *Id*. at 110-111. He also presented Gable with three pieces of paper--all dated August 11, 2011--documenting the simultaneous imposition of a written warning, suspension, and termination. Pl.'s Dep. Ex. 30-32.

## II.

Gable claims that Defendants fired her because she took FMLA leave. Defendants have moved for summary judgment on the ground that they fired Gable because of her attendance problems, a non-discriminatory reason. Summary judgment is appropriate only if the evidence, viewed in the light most favorable to Gable, is such that no reasonable jury could return a verdict in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

It is unlawful for an employer to interfere with an employee's rights under the FMLA or retaliate against an employee for taking FMLA leave. 29 U.S.C. §§ 2615(a)(1)-(2). Gable contends that Defendants interfered with her statutory

right to reinstatement and retaliated against her for taking FMLA leave in the first place. The common question when interference and retaliation claims are so "closely linked" is whether a reasonable jury could find that Gable's exercise of her rights under the FMLA was a but for cause of her termination. *See Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 444 (7th Cir. 2011) (collapsing FMLA interference and retaliation claims into a common inquiry about causation); *Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014) (assuming, without deciding, that but for causation applies to FMLA retaliation claims after *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), adopted that standard for Title VII retaliation claims).

Gable may use the direct or indirect method of proof to show that a jury could find a causal connection between her FMLA leave and her termination. *Malin*, 762 F.3d at 562 ("[t]he same model of proof applies to both her Title VII and FMLA retaliation claims"). "Under the direct route, [Gable] may provide either 'smoking gun' or circumstantial evidence of retaliatory intent." *Carter v. Chicago St. Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). The approved forms of circumstantial evidence under the direct method include "suspicious timing, ambiguous statements from which retaliatory intent can be inferred, evidence of similar employees being treated

10

differently, or evidence that the employer offered a pretextual reason for the termination." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir. 2014).

Gable has presented three forms of circumstantial evidence--ambiguous statements, suspicious timing, and evidence of pretext--from which a jury could reasonably find that Defendants fired her because she took FMLA leave. First, Gable overheard Balsis complaining about a female employee's upcoming absence shortly after she discussed taking FMLA leave with Schroeder. A jury could reasonably infer that Balsis was talking about Gable given the close timing between when she spoke with Schroeder and when she overheard Balsis complaining. His comments suggest that at least one of Gable's supervisors was not supportive of her decision to take FMLA leave. *See Goelzer v. Sheboygan Cty., Wisc.*, 604 F.3d 987, 994 (7th Cir. 2010) (reversing summary judgment for employer where employee presented evidence that her supervisor was frustrated about her use of FMLA leave).

Defendants counter that Balsis may have been talking about Lisa Miller, another clerical employee who was on FMLA leave from June 13, 2011 until August 12, 2011. See Reply Br. at 7 n.5. It would be strange, however, for Balsis to use the future tense--"So she's going to be out," Pl.'s Dep. at 113--to complain about an employee who was already on leave. Moreover,

I am required to draw all reasonable inferences in Gable's favor at the summary judgment stage. The timing of Balsis's comments is enough for a jury to reasonably conclude that he was expressing frustration about Gable's upcoming FMLA leave, not Lisa Miller's ongoing leave.

The second piece of circumstantial evidence suggesting that Defendants fired Gable because she took FMLA leave is the suspiciously close timing between her request for leave and her termination. Gable formally requested FMLA leave on July 27. Whether Defendants could have denied Gable's request as untimely, as they now suggest, is beside the point because the HRSC approved her leave. Gable was excused from work on July 28 to attend a court hearing and took FMLA leave from July 29 through August 10. Defendants then fired Gable on her first day back from leave. I cannot dismiss the fact that Gable requested FMLA leave on her last day at work and was fired on her first day back as a case of coincidental timing, especially in light of Balsis's hostility about Gable taking leave in the first place. "[W]hen there is corroborating evidence of retaliatory motive, as there is here, an interval of a few weeks or even months [between an employer's protected activity and an adverse action] may provide probative evidence of the required causal nexus." *See Coleman v. Donahoe*, 667 F.3d 835, 865 (7th Cir. 2012). This is a case where "an adverse action [came] so close

12

on the heels of a protected act that an inference of causation is sensible." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). Whether that inference should be drawn in light of all the other evidence is for a jury to decide. *Id*.

Finally, Gable has presented evidence that Defendants' stated reason for firing her was pretextual. Gable testified that she gave Balsis documentation to explain her absences on July 11, 25, and 26, yet he marked her as unexcused and imposed two strikes against her for those days.[1] Summary judgment is inappropriate when there is such widely conflicting testimony about whether Defendants' stated reason for firing Gable was truthful or pretextual. *Id*. at 315 (noting that "an employer who advances a fishy reason takes the risk that disbelief of the reason will support an inference that it is a pretext for discrimination").

Assuming for the sake of argument that Gable did not submit any documentation to explain her absences on July 11, 25, and 26, there is still reason to doubt that Defendants fired her solely because of attendance issues. All of Gable's attendance issues occurred before she took FMLA leave. In fact, Defendants audited Gable's attendance records on July 26 and made two

---

[1] Balsis's role in administering Volvo's attendance policy shows that he was "at least partly responsible" for Gable's termination and can be sued individually for his actions. *See Baier v. Rohr-Mont Motors, Inc.*, 2014 WL 6434584, at *8 (N.D. Ill. 2014) (St. Eve, J.).

determinations: (1) she was eligible for a written warning and three day suspension unless she submitted documentation to excuse her recent absences and (2) she would be eligible for termination if she incurred even a partial strike on July 27. *See* Pl.'s Ex. G.  Gable was almost thirty minutes late on July 27 and did not--according to Defendants--submit any documents that might excuse her tardiness or recent absences.  One would have expected Gable to receive at least a written warning on July 27, which Schroeder could do without the HRSC's approval.  Instead, Defendants allowed Gable to work the entire day on July 27 and asked the HRSC for approval to fire her only after she requested FMLA leave.

A jury can infer that an employee would not have been fired but for her FMLA leave where, as here, "a supervisor who had been aware of problems with [the] employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware." *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 806 (7th Cir. 2001).  In other words, if attendance problems were the true reason for Gable's termination, Defendants must explain to a jury why they did not give her at least a written warning on July 27 and waited until August 11 (after she had requested and taken FMLA leave) to blindside her

with three simultaneous disciplinary actions for conduct that predated her leave.

In sum, Gable has presented a combination of circumstantial evidence from which a jury could reasonably find that Defendants fired her because she took FMLA leave rather than for attendance issues.

III.

Defendants' motion for summary is DENIED for the reasons stated above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 30, 2015